AUSA: Philip Jacques Telephone: (313) 226-9654

AO 91 (Rev. 11/11) Criminal Complaint Special Agent: Brady Rees Telephone: (313) 202-3400

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

United States of America
v.
W. Wayne Cherry

Case No. 2:26−mj−30123
Assigned To : Unassigned
Assign. Date : 3/6/2026
Description: Sealed Matter (da)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 20, 2026 in the county of Wayne in the Eastern District of Michigan, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm. |
| 18 U.S.C. § 922(o) | Illegal possession of a machinegun. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Hon. Brady Rees, Special Agent-ATF
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: March 6, 2026

[signature: Elizabeth A. Stafford]
*Judge's signature*

City and state: Detroit, Michigan

Hon. Elizabeth A. Stafford, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Brady W. Rees, being first duly sworn, hereby state:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests of offenses enumerated under federal law.

2. I have been an ATF Special Agent since January 2016, and I have had extensive law enforcement training, including at the Federal Law Enforcement Training Center in the Criminal Investigator Training Program and ATF Special Agent Basic Training. Prior to becoming an ATF Special Agent, I was a police officer with the City of Novi, in Michigan, for approximately three years. I also have a bachelor's degree in Criminal Justice.

3. As an ATF Special Agent, I have participated in numerous criminal investigations, including investigations involving firearms, armed drug tracking, and criminal street gangs. I am familiar with, and have experience using, a variety of investigative techniques and resources, including physical and electronic surveillance, undercover and various types of informants, and cooperating sources.

4. I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or

other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

5. ATF is currently conducting a criminal investigation concerning W. Wayne CHERRY (DOB: XX/XX/1969) for violations of Title 18 U.S.C. § 922 (g)(1), felon in possession of a firearm, and 18 U.S.C. § 922(o), Illegal Possession of a Machinegun, among other state and federal criminal violations.

## I. PROBABLE CAUSE

### A. Background on Glock Switch Conversion Devices

6. A Glock switch is a conversion device designed to convert a Glock firearm from a semi-automatic weapon to a fully automatic weapon.

a. Conversion devices have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute.

b. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing

the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device.

c. These devices are referred to by different names, including but not limited to: "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs).

d. Since May of 1986, the ATF considers Glock conversion devices as machineguns. The National Firearms Act (NFA), 26 U.S.C. Chapter 53, defines the term "firearm" to include a machinegun. Section 5845(b) of the NFA defines "machinegun" as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." Apart from official military and law

enforcement use, Glock conversion devices may only be lawfully possessed by properly licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required of those manufacturing, importing, or dealing in National Firearms Act (NFA) weapons.

7. For reference, Images 7a depicts a Glock Conversion Device.




**Image 7a**

8. The ATF has examined an auto sear known by various trade names including “AR15 Auto Sear,” “Drop In Auto Sear,” and “Auto Sear II,” which consists of a sear mounting body, sear, returning spring, and pivot pin. The ATF finds that the single addition of this auto sear to certain AR15 type semiautomatic rifles, manufactured with M16 internal components already installed, will convert such rifle into machineguns. Consequently, the auto sear is a machinegun as defined by 26 U.S.C. § 5845(b). For reference, Images 8a depicts a Drop In Auto Sear.



**Image 8a**

B. Undercover Purchase of Glock Switch from CHERRY

9. Since approximately February of 2026, ATF, and the Detroit Police Department, have been investigating CHERRY for several possible violations of Title 18 U.S.C. § 922(g)(1) felon in possession of a firearm, Title 18 U.S.C. § 922(o) possession of a machine gun, and Title 18 U.S.C. § 922 (a)(1) dealing firearms without a license.

10. I reviewed law enforcement law enforcement databases regarding W. Wayne CHERRY's criminal history and found CHERRY was convicted of the following offenses:

a. 1987 – Plea - Felony – Interference with Government Property, Burglary, Possession of a Firearm During the Commission of a Crime, Possession of Tools for the Commission of a Crime, Possession of a Firearm by a Convicted Felon, Carrying a Concealed Weapon, and Carrying a Pistol without a License –

Sentenced to 5 years confinement – Superior Court (Georgia) (Will CHERRY & Wayne CHERRY).

b. 2011 – Plea - Misdemeanor – Domestic Assault 3rd – Sentenced to 1 year confinement Abbeville Sheriff's Office (Alabama) (W. Wayne CHERRY).

11. Based on CHERRY's felony conviction and prison sentence, probable cause exists that CHERRY is aware of his status as a convicted felon and his prohibition from possessing firearms. Moreover, based on my training and experience, when an individual pleads guilty to a crime, as in this case, the court advises the defendant they are pleading guilty to a felony.

12. ATF received information that in the first week of February 2026, W. Wayne CHERRY entered Downriver Guns, located at 44800 N. Interstate Service Drive, Belleville, Michigan, and shot his personal firearm on the range. After he shot his firearm, he began speaking with several of the employees. While speaking with employees, CHERRY provided his cell phone number. After speaking with employees, CHERRY left a bag on the counter for them and exited the business.

13. Upon the employees inspecting the contents of the bag, the observed approximately five (5) "Glock switches" also known as machinegun conversion devices (MCD). These devices were described as being made of plastic and

suspected of coming from a 3D printer. After the employees discovered what the items were, they destroyed the items and discarded them.

14. On February 18, 2026, Special Agent (S/A) Rees, acting in an undercover capacity, made a recorded phone call to cell phone number 734-XXX-7444, (the cell phone number given to Downriver Guns employees by CHERRY) to arrange the purchase of suspected machinegun conversion devices (MCDs), commonly known as Glock switches. An individual, later identified as W. Wayne CHERRY, answered the phone. S/A Rees inquired about the purchase of Glock switches. CHERRY advised he did not have aluminum "switches" available at this time but did have plastic "switches" available for $20.00 each. CHERRY sent S/A Rees a video via text message, stating, "plastic on a 17gen 3" to prove the plastic "switches" were functional MCDs. "17gen 3" is common slang for a Glock 17 third generation. The video depicted an individual holding a handgun, pulling the trigger, and emptying an entire magazine with a single pull of the trigger. S/A Rees arranged to purchase a plastic switch. Below **(17a)** is a snapshot from the video sent via text message:



**17a**

15. On February 20, 2026, S/A Rees, acting in an undercover capacity, ATF Agents, and Detroit Police Officers conducted an undercover purchase of machinegun conversion devices (MCDs), commonly referred to as Glock switches from W. Wayne CHERRY in the parking lot of a CVS, located at 10915 Belleville Road, Van Buren Township, Michigan. Prior to the purchase, S/A Rees was issued prerecorded government funds, a recording device, and instructed to purchase MCDs from CHERRY.

16. At approximately 11:34 a.m., S/A Rees made a recorded to cell phone number 734-XXX-7444 to arrange the purchase of machinegun conversion devices (MCDs). During this phone call, CHERRY advised the following:

a. "You don't even have to have a firearm, just having this piece in your pocket is 5 years… if you don't even own a firearm."
b. CHERRY is in possession of an M4 equipped with an MCD and will convert a lower receiver to fully automatic for $600.00.

c. CHERRY can make aluminum Glock switches, but with the cold weather, has not made any recently.

d. S/A Rees was directed to CVS, located at 10915 Belleville Road, Van Buren Township, Michigan, to complete the purchase.

17. At approximately 1:49 p.m., S/A Rees arrived at the CVS parking lot, located at 10915 Belleville Road, Van Buren Township, Michigan and parked next to CHERRY, who was the driver and sole occupant of a black Chevrolet Silverado with an orange light bar/ lights, Michigan license plate: 4K5175. CHERRY entered the front passenger seat of the undercover vehicle and handed S/A Rees 1 one (1) plastic bag containing five (5) suspected machinegun conversion devices, commonly referred to as Glock switches in exchange for $20.00 prerecorded government funds. CHERRY discussed with S/A Rees the process and cost of 3D printing MCDs. CHERRY explained it cost approximately $400.00 for the printer and $29.00 for the filament, making the cost of five switches approximately $1.00 to print. CHERRY further advised he went through approximately 1,000 rounds of ammunition testing the 3D printed MCDs to ensure the MCDs functioned. CHERRY elaborated that the video previously sent to S/A Rees depicted a 3D printed MCD on his personal Glock, 17, and he was the one firing the weapon. CHERRY advised he plans to manufacture aluminum MCDs when the weather

gets warmer. CHERRY also indicated he sells fully automatic lower receivers for $700.00. Below (**17a** and **17b**) are snapshots taken from the undercover recordings:



**17a**



**17b**

18. Following the undercover transaction, S/A Rees departed. This concluded the undercover purchase.

19. On February 20, 2026, ATF Special Agent Kenton Weston viewed images of the purchased MCDs. In addition to basic ATF training, SA Weston is a graduate of a specialized course on privately made firearms and machinegun conversion devices (PMF/MCD). SA Weston has provided instruction to DPD officers, ATF Special Agents, and Task Force officers on the identification of PMFs and MCDs. SA Weston has experience in the investigation, seizure, and

examination of dozens of PMFs and MCDs. After viewing the photographs, SA Weston confirmed that the device affixed to the firearm appeared to be a machinegun conversion device (MCD).

20. Per SA Weston, an individual can install this MCD into a Glock style slide to make the firearm shoot automatically and function as machinegun. This MCD is a small device that inserts into the firearm. When installed, the device disables the firearm's ability to limit one round of ammunition to be fired per trigger pull. A machinegun is a firearm under the National Firearms Act (NFA), 26 U.S.C. § 5845(a). A machinegun is defined, in pertinent part, as "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b). An MCD is a part, or combination of parts, designed and intended for use in converting a semiautomatic Glock-style pistol into a machinegun; therefore, it by itself, is a "machinegun."

21. Additionally, SA Weston examined the purchased MCDs. Based on the size, shape, and material this MCD appears to be a 3D printed "invisi-switch". This MCD disables the firearm's ability to limit one round of ammunition to be fired per trigger pull and is a and machinegun under the National Firearms Act (NFA), 26 U.S.C. § 5845(a).

22. On March 5, 2026, I contacted ATF Interstate Nexus Expert Special Agent Michael Jacobs regarding the Glock, 17 pistol, and SA Jacobs advised the firearm was manufactured outside of Michigan and therefore have traveled in and affected interstate commerce

23. S/A Henry contacted Industry Operations Investigator Karen Sharpe, who queried the National Firearms Registration and Transfer Record and confirmed CHERRY has no firearms or machine guns registered.

## II. CONCLUSION

24. Probable cause exists CHERRY possessed illegal conversion devices on February 20, 2026, at his residence located in the Eastern District of Michigan, in violation of Title 18 U.S.C. § 922(g)(1) and Title 18 U.S.C. § 922(o).

Respectfully submitted,

Brady Rees
ATF Special Agent

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Hon. Elizabeth A. Stafford
United States Magistrate Judge

Date: March 6, 2026